STATE v. SAMUEL B. PEARSON.

*Farming out Prisoners—Prison Bounds.*

1. The Superior Court has not power, at a term subsequent to that at which one convicted for an affray was sentenced to imprisonment in the county jail for 12 months, and be discharged upon payment of costs, to grant an order for him to be hired out by the County Commissioners. Only the Judge, before whom he was tried, had the power to authorize his being farmed out, under the statute.

2. The provision of the statute, in reference to "Prison Bounds" for persons *committed* for misdemeanors and crimes, other than treason and felony, does not apply to one *in execution*, as a punishment for a criminal offence.

MOTION in behalf of the defendant who had been sentenced to jail at Fall Term, 1887, of the Superior Court of BURKE, heard before *Merrimon, J.,* at Spring Term, 1888, of said Court.

At the Fall Term of 1887, of the Superior Court of said county, the appellant was convicted of an affray and sentenced " to be imprisoned in the common jail of Burke County, for twelve months, and be discharged upon payment of costs;" and he was in execution.

At the Spring Term, 1888, of the same Court, he made application to the Court to be allowed the benefit of "prison bounds," or to be hired at labor, etc., and moved, as follows:

" Wherefore affiant prays the honorable Court to grant him prison bounds for his health's sake, being that his offence is not felony, and failing that, that the Court grant an order for his being hired out by the County Commissioners, upon time to be prescribed by the Court."

The Court denied the motion, as follows:

" Upon hearing which motion, and argument of counsel, and the consent of the Solicitor being shown to the Court,

that either relief might be granted, as in the judgment of the Court might seem best, and with a full statement of all the circumstances in the case, the Court is of the opinion, that sufficient merit has been shown to entitle the prisoner to one or the other relief prayed for in the motions above set forth, but adjudges, that both motions be refused for the want of power of the Court to grant the relief. And from this judgment declaring a want of power in the Court to grant either motion," the prisoner appealed to this Court.

*Attorney General,* for the State.
*Mr. J. C. L. Harris,* for the defendant.

MERRIMON, J., (after stating the facts.)    It is clear that the Court, to whom the application was made, had no authority to make an order authorizing the County Commissioners " to farm out " the appellant as allowed by the statute (*The Code,* § 3448,) because the *proviso* of the section cited, expressly provides that " it shall not be lawful to farm out any such convicted person, who may be imprisoned for the non-payment of a fine, or as punishment imposed for the offence of which he may have been convicted, unless the Court, *before whom the trial is had,* shall in its judgment so authorize."    It seems that such permission is intended to be annexed to, and become part of the judgment, and to be allowed only in the discretion of the Court, and the judgment could not be disturbed at a subsequent term of the Court.    The purpose of the statute is to give the particular Court—Judge—before whom the party convicted was tried, and who had the better opportunity to hear the facts of the aggravation or mitigation of the offence, authority to grant *permission* " to farm out " the convicted person.    There is no statutory provision that confers upon the Court authority to *direct* such convicted person to be farmed out..    *State* v. *Norwood,* 93 N. C., 578; *State* v. *Johnson,* 94 N. C., 863.

We also concur in the opinion of the Court below, that it had not authority to grant to the appellant the benefit of " prison bounds," as allowed in certain cases by the statute. (*The Code,* § 3466). That section provides, that " For the preservation of the health of such persons as shall be *committed* to jail, the Board of Commissioners of each county shall mark out such a parcel of the land as they shall think fit, not exceeding six acres, adjoining the prison, for the rules thereof; and every prisoner, not *committed* for *treason* or *felony,* giving bond, with good security, to the sheriff of the county, to keep within the rules, shall have liberty to walk thereon out of the prison, for the preservation of his health, and, on keeping continually within the said rules, shall be deemed to be, in law, a true prisoner; and that every person may know the true bounds of said rules, they shall be recorded in the county records, and the marks thereof shall be renewed, as occasion may require."

The County Commissioners are thus empowered " to mark out such a parcel of the land as they shall see fit, not exceeding six acres, &c."—that is, the land so marked out must adjoin the jail, be such as the commissioners have exclusive control of, and adapted, not only to the purpose of the exercise of the prisoner, but as well to prevent, as far as practicable, his escape—it must be certainly, definitely, and distinctly marked out, so that the prisoner may see and know the rules and keep within the same, and others may see that he does so. The boundaries, thus established, are for all legal and practical purposes, merely a further extension or enlargement of the prison walls, in order that the prisoner's health may be preserved and subserved; his confinement, thus enlarged, he is not deemed to be out of prison—out of jail—but he remains therein in contemplation of law, and his imprisonment is only rendered the more tolerable, while he remains within the rules. He is, " in law, a true prisoner," as the statute expressly declares.

But this statutory provision does not apply in favor of persons who have been convicted of criminal offences, and sentenced to imprisonment by the judgment of the Court. It applies to prisoners who, in civil cases, are committed to jail on *mesne* process, or on final judgment, and in criminal cases, when the prisoner is committed to jail for lack of bail, in order to secure his presence before the appropriate Court, to answer the criminal charge preferred against him.

The present statute, as recited above, has undergone no essential change in the scope of its provisions since its first enactment in April, 1741, although it has been repeatedly re-enacted. (Rev. Stats., ch. 90, § 11; *The Code,* § 3466.) The title of the statute, as originally enacted, (Ired. Rev., ch. 18, § 3, p. 83) indicates its purpose, and the extent of its application, as follows: "An act for the building and maintaining of court-houses, prisons and stocks in every county within this province, and appointing *rules for each county prison for debtors.*" The main purpose was to extend the clause in respect to "prison bounds" to debtors, who, as the law then, and for more than a hundred years thereafter, prevailed, might, in certain cases, be imprisoned for debt; but its terms embraced persons *committed* to answer for criminal offences, other than "treason or felony." The statute has been thus uniformly applied and interpreted in the past, so far as appears from the decisions of this Court. *Wynn* v. *Buckett,* Tay., 140, (87); *Brown* v. *Frazier,* 1 Murph., 421; *Ex parte Bradley,* 4 Ired., 543; *Northam* v. *Terry,* 8 Ired., 175; *Whitley* v. *Gaylord,* 3 Jones, 286. And so far as we know or can learn, no prisoner in this State was ever allowed the benefit of "prison bounds" while he was in execution for a criminal offence. If the right to such enlargement had belonged to such prisoners, it certainly would have been claimed and allowed in very many cases before the present time.

The statute does not in terms apply to persons convicted of criminal offences. The words used, descriptive of classes,

100—27

are "such persons as shall be *committed* to jail," and " every prisoner not *committed* for treason, or felony," &c. The word *committed,* has a technical sense in criminal procedure. It implies sent to jail or other proper prison, to be there detained and held to answer for a criminal offence preferred, or to be preferred against the party in the course of procedure, until he shall be discharged according to law. 4 Bl. Com., 296—309; Chit. Cr. Law, 107, 108; Bouvier's Law Dic., words, " To commit, Commitment"; Bur. Law Dic., word " Commitment." A person is *committed* to jail by a proper tribunal to answer for a criminal offence; upon conviction, he is sentenced by the judgment of the Court to be imprisoned in jail as a punishment, and when put in jail, he is then in execution of the judgment. The word " *committed,*" is used in the statute in its technical sense, certainly, in its application to prisoners charged with criminal offences.

Moreover, it is altogether improbable that the Legislature would, by such provision, interfere to mitigate or qualify the punishment imposed by the Courts upon criminal offenders; and if it had intended to allow such enlargement to persons in execution for criminal offences, it would, most probably, have conferred express authority upon the Courts to allow or disallow it in their sound discretion. As this is not done, strained inference and unreasonable implication cannot be allowed to confer such authority upon the Courts or the Sheriff.

The Court, therefore, properly held that it had not authority to grant the motions of the appellant. There is no error, and the judgment must be affirmed. Let this opinion be certified to the Superior Court according to law.

It is so ordered.

No error.                                          Affirmed.